AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

| FILED |
|---|
| US DISTRICT COURT WESTERN DISTRICT OF ARKANSAS |
| Dec 28, 2023 |
| OFFICE OF THE CLERK |

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Texarkana Division

In the Matter of the Search of:  )
A Samsung Galaxy Cell Phone with IMEI  )
#355502291674600 and Motorola G Power Cell  )   Case No. 4:23-cm-38
Phone with IMEI #351394591967320 Currently in  )
the Custody of Homeland Security Investigations  )
in the Western District of Arkansas.  )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: **A Samsung Galaxy Cell Phone with IMEI #355502291674600 and Motorola G Power Cell Phone with IMEI #351394591967320 currently in the custody of Homeland Security Investigations in the Western District of Arkansas, more particularly described on Attachment A.**

located in the ___Western___ District of ___Arkansas___, there is now concealed *(identify the person or describe the property to be seized)*: **See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2251 | Sexual Exploitation of Child via Production of Child Pornography |
| 18 U.S.C. 2252A(a)(1) | Transportation of Child Pornography |
| 18 U.S.C. 2252A(a)(5)(B) | Possession of or Access with Intent to View Child Pornography |
| 18 U.S.C. 2423(a) | Transportation of a Minor with Intent to Engage in Criminal Sexual Activity |

The application is based on these facts:

☑ Continued on the attached sheet. **Affidavit of HSI Special Agent Daniel Grubaugh.**

☐ Delayed notice of ___ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

DANIEL R GRUBAUGH
Digitally signed by DANIEL R GRUBAUGH
Date: 2023.12.28 11:19:00 -06'00'

*Applicant's signature*

Daniel Grubaugh, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 12/28/23

City and state: Fort Smith, Arkansas

*Judge's signature*

Mark E. Ford, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**



Samsung Galaxy S21 Ultra Cell Phone, Model: SM-G998U, IMEI #355502291674600. This device is currently in the secure custody of Homeland Security Investigations at 3822 Airport Plaza Dr. Texarkana, AR.



Motorola Moto G Power Cell Phone, Model: XT2165DL, IMEI Number: 351394591967320. This device is currently in the secure custody of Homeland Security Investigations at 3822 Airport Plaza Dr. Texarkana, AR.

## ATTACHMENT B

1.  All records and information on the device described in Attachment A that relate in any way to violations of 18 U.S.C. §§ 2251, Sexual Exploitation of Children via Production of Child Pornography; 2252A(a)(1), Transportation of Child Pornography; 2252A(a)(5)(B), Possession of or Access with Intent to View Child Pornography; or 2423(a) Transportation of a Minor with Intent to Engage in Criminal Sexual Activity, including:

    a.  All visual depictions, including still images, videos, and other recordings, of child pornography or minors engaged in sexually explicit conduct, as defined 18 U.S.C. § 2256;

    b.  Any and all address books, names, and lists of names and addresses of individuals who may have been contacted by GUIDRY by use of his cell phone or computer or by other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2);

    c.  Information or correspondence pertaining to the production, transportation, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    d.  Location information;

    e.  Contact names, addresses and telephone numbers, calendars, notes, photographs, and any items demonstrating ownership of the cellular telephone;

    f. text messages, emails, social media application usage and communications, internet search terms, web history, call information, and voicemails;

    g. Information that concerns online storage, cloud connected services, or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage;

    h. Any and all visual depictions of minor;

2. Evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence; Evidence of user attribution showing who used or owned the above listed electronic devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the Internet Protocol addresses including:

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any governmental personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the HSI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Daniel Grubaugh, being first duly sworn, state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I am a Special Agent with Homeland Security Investigations (HSI), of the United States Department of Homeland Security (DHS), currently assigned to the Resident Agent in Charge (RAC), Texarkana office. I have been employed as a Special Agent for HSI since August 2009. I successfully completed the Criminal Investigator Training Program (CITP) and the Homeland Security Investigations Special Agent Training (HSISAT) at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. Additionally, I have become a Computer Forensics Agent after I successfully completed the Basic Computer Evidence Recovery Training (BCERT) and Basic Mobile Device Forensics Training (BMDF) at the IRS-DI Digital Forensics Lab in Woodbridge, VA. Prior to my employment with HSI, I served as an Immigration Enforcement Agent for Immigration and Customs Enforcement (ICE), Enforcement and Removal Office (ERO) and was assigned to the T. Don Hutto facility in Taylor, Texas from August 2006 until my employment with HSI. Prior to ERO, I was a Lead Police Officer and Traffic Collision Investigator for the Department of the Army Civilian Police on Fort Hood, Texas for three years, a Department of the Army Civilian Security Assistant/Inspector on Fort Hood, Texas for six months, a Department of the Army Civilian Communications Center Operator on Fort Hood, Texas for one and a half years and an Active Duty, U.S. Army Military Police Officer for twelve years with duty stations around the world.

2.  This affidavit is based on my personal knowledge, experience, and training as well as on information obtained by me through investigative observations and conversations with other HSI agents and agents from other law enforcement agencies. This affidavit does not

1

set forth every fact resulting from this investigation; rather, it contains a summary of the investigation to date for the limited purpose of establishing probable cause to obtain a search warrant.

3. This affidavit is made in support of an application for a search warrant to search for and seize instrumentalities, fruits, and evidence of violations of Title 18, United States Code, Sections 2251, Sexual Exploitation of Children via Production of Child Pornography; 2252A(a)(1), Transportation of Child Pornography; and 2252A(a)(5)(B), Possession of Child Pornography, as well as Title 18, United States Code, Section 2423(a), Transportation of a Minor with Intent to Engage in Criminal Sexual Activity. The item(s) that are the subject of the search and seizure applied for in this affidavit are more specifically described in Attachment A and are currently in the possession of the HSI Texarkana RAC Office.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4. I make this affidavit in support of an application for a search of the following item(s) belonging to or associated with Andrew Joseph GUIDRY (DOB 08/14/1982) and a juvenile victim born in 2007:

   a. Samsung Galaxy S21 Ultra Cell Phone, Model: SM-G998U, Serial Number: R5CR719AXZM, IMEI Number: 3555 0229 1674 600 belonging to Andrew GUIDRY.

   b. Motorola Moto G Power Cell Phone, Model: XT2165DL, Serial Number: S3RQS32.20-42-10-6-10-1, IMEI Number: 351394591967320 provided to the victim by GUIDRY as stated by GUIDRY in his interview by Magnolia Police.

5. Both devices are currently in the possession of the HSI Texarkana RAC Office.

6. The applied for warrant would authorize the forensic examination of the device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. On September 12, 2023, Arkansas State Police Investigator David Hampton met with Sgt. Jason Campbell at the Magnolia (Arkansas) Police Department to discuss a case. Hampton stated that a 16-year-old girl (hereafter "victim") recently gave birth to a child at the Camden Hospital in Camden, Arkansas.

8. A nurse, Alison Burton, reported the conception would have been when the victim was 15 years old.

9. Hampton stated that the victim disclosed the father of the baby was 41-year-old Andrew GUIDRY, who is related to the victim's stepmother and lives at the same property as the victim.

10. Hampton stated that he spoke with the nurse at the hospital and learned GUIDRY had signed an affidavit stating he was the father of the child.

11. Sgt. Campbell obtained and reviewed medical records received, via a prosecutor's subpoena issued by the Thirteenth Circuit Prosecuting Attorney Jeffrey Rogers and confirmed that Andrew GUIDRY was listed as the father on the birth certificate affidavit.

12. Medical records also indicate the victim and her mother, Joylynn Barnett, had a conversation with the nurse prior to filling out the Childbirth Certificate form. Both Barnett and the victim initially indicated they did not want Andrew GUIDRY on the certificate because they did not want to get him in trouble due to his age.

13. Barnett told the nurse that she was aware of the law, but GUIDRY would be a good provider for her daughter and granddaughter and told the nurse that GUIDRY, the victim, and the victim's newborn were going to live in a trailer behind her house.

14. Hampton told Sgt. Campbell he interviewed the victim, and she told him that she and GUIDRY had sex in the home and that he is the father of the child.

15. Sgt. Campbell reviewed recorded interviews provided by Hampton wherein the victim and her mother, Joylynn Barnett, discussed that Andrew GUIDRY was the child's father.

16. Andrew GUIDRY was arrested on October 3, 2023, for the Arkansas state violations of Distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child, in violation of Arkansas Code Annotated, Section 5-27-602(a)(l)(b)(l) and Sexual assault 4th degree, in violation of Arkansas Code Annotated, Section 5-14-127(a)(l)(A).

17. In a post-*Miranda* interview, GUIDRY informed investigators that he started a relationship with the victim in November of 2022.

18. GUIDRY stated that he knew she was 15 years old at the time and that Barnett knew about the relationship.

19. GUIDRY told investigators that he had a sexual relationship with the victim, although he knew it was wrong because of the age difference.

20. GUIDRY stated during his interview "I know it makes me look like a predator, I know it does, I am not. It's just. I had my run in with women, they cheat, they lie they stole. They use everything. And I popped off to my aunt one day, fix'n find me a young girl, that basically, we can work into this relationship together, and grow, like a mature woman should be able to grow, and then me be a father and everything else. And then one thing led to another and here me and [victim] are."

21. Sgt. Campbell asked GUIDRY if there were going to be nude pictures of the victim or other underage children on GUIDRY's phone, and GUIDRY stated that there would be such images. GUIDRY signed a permission to search form.

22. Sgt. Campbell asked GUIDRY if GUIDRY had ever sent nude pictures of himself to the victim's phone and GUIDRY stated, "yes", to which he added that three to four months prior to this interview, he had gotten the victim a working phone because her old phone only worked while connected to Wi-Fi.

23. Sgt. Campbell located several videos that showed GUIDRY and the victim having sex. Sgt. Campbell showed one of the videos to GUIDRY, who confirmed that the people in the video were himself and the victim.

24. The victim was interviewed on October 3, 2023, by Detective Bill Schaefer and Sergeant Tally of the Magnolia Police Department.

25. The victim told Detective Schaefer that she had been having a sexual relationship with GUIDRY, and he is the father of the baby.

26. The victim stated that she also traveled with GUIDRY when he was an over-the-road truck driver, and they had intercourse in several states.

## BACKGROUND ON USE OF COMPUTERS AND CELL PHONES WITH CHILD PORNOGRAPHY

27. I have personally been involved in the execution of search warrants relating to child pornography investigations. I have personally interviewed offenders. I have had the opportunity to observe and review numerous examples of child pornography (as defined in Title 18, United States Code, Section 2256) in all forms of media including computer media. I have read numerous publications related to investigations of the sexual exploitation of children. I have

5

also consulted with other law enforcement officers who investigate the sexual exploitation of children. Based on my training and experience, I know that:

   a. Most individuals who collect child pornography are persons who have a sexual attraction to children. Most individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. Their collection may consist of child erotica as well as child pornography since it is common to find child pornographic images in the form of a series of images showing the children posed provocatively and in various stages of undress prior to or as part of the sexual act.

   b. Most individuals who collect child pornography rarely dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery their collections of illicit materials. They almost always maintain their collections in the privacy and security of their own homes or other secure locations. Computer technology, including mobile smart or cell phones, and the Internet have revolutionized the way child pornography is produced and distributed. The Internet affords individuals several different venues for meeting each other, obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

   c. Computers including cell phones basically serve five functions in connection with child pornography: production, communication, distribution, storage, and social networking. In addition, new technologies are developing allowing average

6

computer users avenues to mask their IP addresses for more private Internet browsing sessions.

d. With digital cameras and cell phones, images of child pornography can be transferred directly onto a computer, a tablet, an iPad or other digital storage media. A modem allows any computer device to connect to another computer device using telephone, cable, or wireless connection. In addition, some users may set their electronic devices to sync with one another to allow back-up storage of their files should damage or other incidence of loss occur on any of their individual devices. Through the Internet, electronic contact can be made to literally millions of computers around the world using any of their devices.

e. The computer's ability to store images in digital form makes the computer and related devices an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers and more recently in mobile smart phones has grown tremendously within the last several years. These drives can store thousands of images at very high resolution.

f. Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer or smart phone with access to the Internet. Evidence of such online storage of child pornography is often found on the user's devices.

Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer devices in most cases.

28.  As with most digital technology, communications made from a computer or smart phone are often saved or stored on that device. Storing this information can be intentional, for example, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. A forensic examiner often can recover evidence that shows whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space -- that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space -- for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or

"cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's type of device, operating system, storage capacity, and computer habits.

## CHARACTERISTICS COMMON TO INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN

29. Based upon my knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the online enticement of children and collection of child pornography. There is probable cause to believe that evidence of the receipt and possession of child pornography are likely to be found at the above listed device. Based on my training and experience, I believe that GUIDRY has a sexual interest in children. Characteristics common to people with a sexual interest in children include that they:

   a. Generally, have a sexual interest in children and receive sexual gratification viewing children engaged in sexual activity or in sexually suggestive poses, or from literature describing such activity.

   b. May collect sexually explicit or suggestive materials, in a variety of media, including in hard copy and/or digital formats. Child pornography viewers and collectors oftentimes use these materials for their own sexual arousal and gratification. They may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse or groom a child to participate in sex, or to demonstrate the desired sexual acts. They may also use toys, games, costumes,

9

sexual clothing, sexual paraphernalia, and children's clothing to lure or entice children. They may keep "trophies" or mementos of sexual encounters with children, or items that they use to gratify a sexual interest in children, such as by collecting children's underwear or other items belonging to a child.

c. May take photographs that either constitute child pornography or indicate a sexual interest in children by using cameras, video cameras, web cameras, and cellular telephones. Such images and video may be taken with or without the child's knowledge. This type of material may be used by the person to gratify a sexual interest in children.

d. Generally, maintain their collections in a safe, secure, and private environment, most often where they live and/or on their person. These images and videos can be downloaded onto desktop or laptop computers, computer disks, disk drives, data disks, system disk operating systems, magnetic media floppy disks, Internet-capable devices, cellular telephones, tablets, digital music players, and a variety of electronic data storage devices (hardware, software, diskettes, tapes, CDs, DVDs, SD cards, memory cards, USB/jump/flash memory devices, external hard drives, and other digital storage media). The images can be stored in both digital and hard copy format and are usually hidden so that they are not found by other members of the residence or by anyone else who enters the home. Such hiding places could include but are not limited to garages, sheds, attics, vehicles, bags, and pockets. Digital files and devices may be password protected, encrypted, or otherwise protected.

e. May correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, screen names, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. Such correspondence may take place, for example, through online bulletin boards and forums, Internet-based chat messaging, email, text message, video streaming, letters, telephone, and in person.

30. Based on my training, experience, and research, I know that the device has capabilities that allows it to serve as a wireless telephone, digital camera, portable media player, and a GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered using forensics tools.

32. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

33. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices

consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

34. *Manner of execution.* Because this warrant seeks only permission to examine device(s) already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

35. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the device(s) described herein and in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

DANIEL R GRUBAUGH
Digitally signed by DANIEL R GRUBAUGH
Date: 2023.12.28 11:20:07 -06'00'

Daniel Grubaugh, Special Agent
Homeland Security Investigations

Sworn to before me and signed in my presence and/or by reliable electronic means.

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE
12/28/23

13